Case number 22-1773. Tanya Allegra Mills, Appellants, versus Anadolu Agency NA, Inc. Mr. Malahi for the appellants, Mr. Klapra for the appellee. Good morning. Morning. Mr. Malahi? Yes, Your Honor. You may begin. May it please the court. There were two issues in this case, whether the court had personal jurisdiction over appellee Anadolu, and whether or not plaintiffs adequately alleged that Anadolu was her employer. Trial court got them both wrong. The trial court conflated those issues, but they are really separate. And the personal jurisdiction issue, based on facts which were not even tested, there is personal jurisdiction over Anadolu. Anadolu had a brick and mortar office in the District of Columbia. Ms. Mills worked in that office for about three to four months. During the time she worked in that office, she earned the wages that are at issue in this case. For personal jurisdiction, all that is necessary is that the claims bear some relationship to the acts of the forum state. That standard was clearly satisfied. My understanding is that what the defendant and what the district court is focusing on is not the context, but as you point out, the second part, the relationship between the context and the claim. And I'm a little bit mystified about the way the claim has been briefed, because my understanding is that this is a claim arising under the DC analog to the Fair Labor Standards Act, the DC WPCL. And it's unclear to me why cases about independent contractors or joint employers are being cited, because my understanding under the DC WPCL is that employees or anyone, encompass any person who is, what's the word? Who is suffered to work, who is- Suffered or permitted to work. Suffered or permitted to work, and that under the DC law, separate entities, regardless of their formal legal status as separate, are joined severally liable for violation. So I don't know why that isn't briefed in a more straightforward manner, because I don't think there's any claim that she's an independent contractor. I don't think there's any claim she's an independent contractor either. She does have an independent contractor agreement, but we've, as we briefed, that contract is essentially irrelevant because it runs contrary to the provisions of the DC wage payment- It runs contrary to the relevant facts. I mean, and there's DC law on that, that regardless of the formal statement, I think the leading case, Wright versus office and wage and hour, is someone who had a contract that characterized her. This is the woman who did social media work and also administrative work, characterized her as an independent contractor. And the DC Court of Appeals said, well, we're gonna look at the actual facts, and they've helped, part of her work was as an independent contractor, but where she was supervised, where she was provided equipment, where her work was continuous, where it was integral to the employer's business, that was not independent contractor. And I'm just not sure why, if there's something that I'm missing, why the claim has not been analyzed more that way and is instead sort of independent contractor joint employer analysis. Why? We focused on the joint employer analysis because the independent contractor issue was not really raised by the other side. Right, and I mean, neither, it seems to me that neither independent contractor nor joint employer law is really directly on point where the question is the applicability of the DCWPCL to facts like these. Yes. But, I mean, maybe there isn't really, I guess, maybe there isn't law that's very closely analogous, but to me, it seems revealing that even a subcontractor or a staffing firm can be held to be the employer for purposes of, or joint and severally liable for wages under this law, because it's not about the contractual relationship, it's about getting wages paid. Yes. By people who are having folks work for them in DC, right? I agree, Your Honor. And- Council, the thing I'm perplexed about is, I don't understand, maybe I'm not following it through correctly, but you're now pushing joint employer as your principal argument, but I don't know why in the end that doesn't doom you as well, because if they are joint employers, then the forum selection clause would presumably bind both pieces of the joint employment relationship, and then you're facing the forum non-convenience. Now, that is a question that needs to be decided by the district court, I think, in the first instance. But you certainly will face that as a serious problem because there is a forum selection clause and there is law that suggests you may be bound by it if in fact, you're right, that these are joint employers. Well, Your Honor, you're correct that the district court would have to decide that issue. However, I don't agree that just because they are joint employers, that the forum selection clause would bind Anadolu here, that Anadolu would be able to take advantage of that clause. Anadolu is located in the District of Columbia, and it doesn't make any sense to me that Anadolu would then wanna go to Turkey or that should go to Turkey to litigate a case where the cause of action arises under DC law. Though there's many, many arguments, including the public interest factors about why that clause should not be enforced in this case. It's a little bit unclear to me, I don't know how you read it, but what the forum selection clause covers, any matter of controversy or dispute between the parties relates there too. And it probably is a question of translation that I don't read Turkish, and that is indecipherable to me. Do you have a position? Yes. On the scope or not of the clause? The key, as you pointed out, is the word there too, because it's focusing on disputes arising from the contract. And so the leave issue is not expressly talked about in the contract, but it's based on course of dealing or a modification. She was getting leave. She was entitled to take advantage of that leave. That was part of the employment relationship. That's part of wages owed under the DC wage payment collection law. But it's not within the scope of that very short contract. So it's outside the scope of the contract. The other thing is the contract does not address when payment needs to be issued, payment of wages. So the timing of that is all governed by DC law, not by the contract. And that's all the more reason why this case should be litigated in the District of Columbia under District of Columbia law. Does that answer your question, Your Honor? But I'm also trying to think about it from the standpoint of we're having this conversation about joint employment, independent contractor status, but the issue is the personal jurisdiction. So how far do we go with kind of that dispute to get to personal jurisdiction? And then whether or not if your real claim is that Anadolu through the employment has something somehow to do with what she was owed, even though all of her other contractual documents relate to the A.H. Herc firm. So if with joint employers, they're both jointly and severally liable, despite the fact that A.H. Herc was paying her salary. As far as personal jurisdiction is concerned, we cited a couple of cases in our reply brief, Shoppers Food Warehouse versus Moreno and Cohen versus Arpegia, California. Personal jurisdiction is not determined the way the trial court determined it. The trial court read the clause arising out of way too narrowly. And that's not the way it's decided. All for personal jurisdiction purposes, it has nothing to do with whether she's an employer or not, employee or not, or whether or not Anadolu is an employer. Those are very separate. Well, it has to relate to the claims. She has to have pleaded a claim that relates to the contacts with D.C., right? Yes. So there's at least a sort of look at the nature of the claim. You're not saying otherwise? No, but the connection is very loose. And if you look at the Shoppers Food Warehouse case, for instance, Shoppers Food Warehouse did not have a store in D.C. Someone slipped and fell at a Maryland store. She brought soup in the District of Columbia. And the only contact that Shoppers Food Warehouse had with the District of Columbia was advertising. So advertising versus negligence in maintaining a store. The arising out of concept does not have to be as direct as the district court found. All that has to happen is that the claims need to bear some relationship to the acts in the forum state. So Anadolu had a brick and mortar building in the forum state, and the plaintiff worked in that building. She worked under their supervisors. She earned the wages at issue while she was there. That's enough. That's more than necessary to establish personal jurisdiction under District of Columbia law. I'm willing to look at D.C. Court of Appeals cases with some deference on their construing their law, but I'm not sure about due process and personal jurisdiction as a constitutional matter. With Shoppers Food Warehouse, the facts are pretty different from what we have here. So we do need to look at her claim, and we do need to see that the claim relates to the contacts in D.C. Yes, Your Honor, and I believe it does for the reasons that I indicated. But, you know, something just kind of granular. If Ms. Mills is working in D.C. and then she wants to take a vacation day, who approves that time off? I believe that that's something that Anadolu approves because she's being supervised by Anadolu, and Anadolu is the one coordinating her schedule. So that would be approved by Anadolu. Okay. Will- Go ahead, Your Honor. We have nothing more, and you're out of time. We will give you a- Did you reserve time for rebuttal? Yes. How much? Three minutes. Because we've used more, we'll give you a couple minutes. Okay. Thank you, Your Honor. Morning, Mr. Klaproth. Morning, Your Honor. May I please report? My name is Brendan Klaproth, and I represent the appellee, Anadolu Agency, N.A. Inc. The district court directly dismissed the plaintiff's one count lawsuit for lack of personal jurisdiction, as well as felon status. So just to address the personal jurisdiction issue first. That is the only issue before us. I think the 12B6 issue is as well, but I think the threshold issue is- That opinion was vacated, and the case was remanded for the district judge to decide personal jurisdiction. He rejected the case on lack of personal jurisdiction, and that's on appeal to us. Understood. My reading- I mean, I think as we've been discussing with Mr. Malahy, that there is a, we need to know about the merits of the claim, because the claim has to relate to the form of state contact. Understood, Your Honor. So dealing with the, you know, I think the issue here is, does the claim arise out of the conduct being- Or relate to. Or relate to, that is correct. Under the DC code, the law of armed statutes, it says arise out of, but then Moreno tells us it relates to as well. So what we have here, though, is these are the undisputed facts. We have the plaintiff entered into an independent contractor agreement with AA Turk to perform work in Turkey. She was provided with a housing allowance in Turkey, private schooling in Turkey. She was paid by AA Turk. The vacation leave that's being sued over was provided for by AA Turk. And ultimately she was terminated by AA Turk, or her contract was not renewed. So her claim here is for the vacation leave that she's seeking reimbursement for under the DC wage payment collection law. That is the claim. And all of the conduct, none of the conduct here by Anadolu relates to or arises out of her claim. So for example, even in the joint appendix 13 in the amended complaint, the plaintiff alleges that when she had questions about her vacation leave, she didn't contact Anadolu, but instead contacted AA Turk to inquire about that vacation. But I have the same question for you that, and perhaps better directed at you, but the claim is a claim under the DC wage law. And for obvious policy reasons, the DC law like the Fair Labor Standards Act isn't geared to the formal contract relationship between the working person and the person that she's working for, or the entity that she's working for. It intentionally is broader to provide an effective means of ensuring that people don't suffer wage theft or what have you. And so even though of course DC law honors, for example, independent contractor relationships, other kinds of subsidiary relationships, it holds, for example, subcontractors jointly and separately liable for violations along with the prime contractor and even staffing firms who obviously aren't the employer are held jointly and separately liable. So why isn't it sufficient for Ms. Mills to have alleged in this case, sure Anadolu was wholly on subsidiary, I was working there, the leave that I want, I earned while I was there. AA Turk doesn't deny that I'm entitled to leave. They're just saying that we've sued the wrong defendant and they want me to come and sue them in Turkey, but I'm suing under a DC law. So I agree with your honor's assessment of DC law. The independent contractor agreement is not going to be the dispositive determination as to whether she's in fact employed by the statute. So I do agree with that. And I think though there's a recent court of appeals case, I think it's called Steinke, when to determine whether a person is an employee as defined by the statute, we look to Morrison, this circuit's decision. And so, and then you apply the factors set forth in Morrison did the employer or the company have the ability to hire and fire, set the schedule. And the court here went through those factors. So that is the correct test. Is the control a big element as well there? I think the control- That's usually a big distinguishing factor in many of the employment cases. Yes, your honor, that's correct. And I think the control factors apply more so in the independent contractor analysis rather than this joint employer analysis, because in that situation, you're trying to decide whether this person is a free agent in the marketplace and has opportunities to work in other places or if they're under the complete control of this one company. So yes, we also- But one thing that we have as a request is jurisdictional discovery. If this were limited, potentially on a remand to just decide these issues so that there can be a distinction between, what was Anna Doolou's role vis-a-vis why Ms. Neal was actually in that facility and performing duties under, at least in that building, and at least alleging that someone from Anna Doolou was actually managing her or somehow supervising her. You know, what's the harm in finding out what is here? Because you both have just given different answers about who would approve the leave, for example. So with respect to jurisdictional discovery, first off, that was not requested before the trial court. So it's our position that it's been waived. The second point is that the record before the court shows, for example, Joint Appendix 13, the amended complaint, answers Your Honor's question as to who would approve the leave, because as alleged, Ms. Mills did reach out to AA Turk, not Anna Doolou, with respect to the questions of her leave. With respect to the question of termination, the complaint alleges that the individual, there's some, first they say the individual who terminated, may have conveyed the message to terminate is an Anna Doolou employee. That was later withdrawn through briefing. But nonetheless, the point that is alleged in the complaint is that this- Another way to read that is that Ms. Mills is under Rule 11 obligation to allege only facts that she can allege are supported, that she can allege with confidence. So she may not know anything about the formal employment arrangements of the person who fired her. So all she did was change the allegation to say, well, he worked in the office where I worked. I don't take that to be a retraction of any assertion that he may have been an Anna Doolou employee. I'm not sure that it's relevant under the wage law. Let me ask you just to sort of step back and put in perspective implications of your position. If I run a French company and I employ a bunch of people in Washington, D.C., and I have a employment contract with them and I tell them what their wages are, and they work in a brick and mortar office in D.C., binding books, and they're supervised day-to-day in their book-binding activities, and then I decide that I'd actually rather not pay them because it's pretty expensive to pay workers. So I don't pay them. And I have a forum selection clause that if they want to sue me, they have to come to France. I don't dispute that I promised them wages, but it's really not convenient for me to pay. Is it your position that those people are not able to bring a D.C. WPCL claim in the District of Columbia? So that would hit the element in the forum non-convenience analysis as to whether it's a valid provision. I don't think that's issue in this case. Isn't it sort of the same idea? I mean, D.C. is saying, if you're owed wages and you're working here, people better pay those wages. It doesn't track the details of the contractual relationship. It just says, employers, fair notice, if you're having people work for you, not even employers, if you're having people work for you here in D.C., there's a mechanism for making sure they get paid. And part of my concern is, I mean, this is a very, comparatively speaking, small amount of money, but if we rule for you, there's a lot of structuring of sub-minimum wage work, of any number of ways of exploiting workers and depriving them of timely payment of their wages that it seems to me would go along with that. And so I'm looking for your help in telling me what the distinctions are. Sure. And to look at it, like, for example, say there's a corporate parent in Delaware, right? That hires the employees that are performing work in D.C. And there's a form selection clause that says you have to, we'll say France, all right? In that situation, that corporate parent is still doing work in employing people in D.C. And I think the D.C. wage payment collection law would still apply regardless of the form selection clause in that situation. But here, the corporate parent, so the claim isn't brought against A.H., her. The company is actually employing Ms. Mills. So I think that's the distinction. So if the form selection clause covers only claims arising out of the contract, and if this claim arises under the D.C. law, and if Ms. Mills sued A.A. Turk in D.C., then A.A. Turk would have to come to D.C. That's right. And that's, in your view, her mistake was signing a consultancy agreement that has a form selection clause? I'm not saying it's her mistake. But I mean, in terms of her wanting to, having this claim and wanting to bring it here. So I think in that situation, this is a unique set of facts because most of the work was performed in Turkey, right? The contracts are contemplating and all the work's gonna be performed in Turkey. Presumably, Ms. Mills seems to be a sophisticated individual and this was an arm's length negotiation where she negotiated things like schooling, reimbursements. So I do think it was a voluntary and knowing choice on her part. And so I don't wanna go too far down that path because A.A. Turk is not in this case, but I think then the question then becomes when, how was dedication leave accrued? Is it accrued while she was working in Turkey or in D.C.? And are those considered then D.C. wages, which is not really the issue. She alleged they were earned when she was in D.C. Based on an annual leave policy and most of the work was initially performed though in Turkey. What is your reading of any matter of controversy or dispute between the parties relates there to? Are there words missing? Is there a way to translate that better? This is the form selection clause on J.A. 35. The Ankara courts and enforcement officers shall be the exclusive authorized venues for the resolution of any matter of controversy or dispute between the parties relates there to, we don't know relating any matter relating to what? Based on the drafting that seems it does is maybe a poor translation, but any dispute relating to between the parties, you see that a lot of times in arbitration context. You also see arising under the contract or related to the contract. Correct. So, and I think the issue here though, is that as far as Anadolu agency is concerned, that the estoppel principles would apply equally because these claims are being brought based arising from this contract and her work performed for AHRQ. And so she can't avail herself, sue under a contract and then disavow any sort of obligation she has under there too. The agreement doesn't contain any specific information about compensation or benefits. Aren't those terms in the offer letter? It looks like it was redacted the salary portion from the contract. Yes. So on paragraph four of the contract, the agency agrees to pay and then it's blank. So I do think there is terms like for compensation. I just think it was redacted. There's also, I mean, it's curious in the second paragraph, the consultant is obliged to comply with the rules and regulations in the place where he tries to perform his services. So it actually sounds like the local law of the particular workplace applies at least to the employee and perhaps a mutuality principle would require that it also apply to AA Turk. It's in terms of, just sounds like it's a local law of the workplace. Yeah, it does. It says, focuses on the consultant is obliged or obligated. It doesn't refer to AA Turk specifically. And then you also have the separate provision in the offer letter that says the laws of Turkey shall apply to the relationship. So if there's no further questions, I request support. Thank you. Your Honor, I know you indicated that this issue was not relevant, but I just want to clarify something. The employee who terminated my client was, there was an affidavit that said he was, that employee was not employed by Anadolu. That affidavit never said that that employee was employed by AA Turk. But the judge, trial judge concluded that that employee was employed by AA Turk. So there was absolutely no basis for that. And that was drawing an impermissible inference. Well, and your primary position is that on a motion to dismiss that affidavit was erroneously considered. Shouldn't have been considered, yes. Yeah. Yes, Your Honor, that is my position. What's your response to the estoppel point that Mr. Claproth makes, that her claim to the wages rests on her contract, even though the actual claim she's bringing in D.C. is under the D.C. law, it's for wages owed under the contract. If she's invoking the contract, she's invoking something that has a forum selection clause, and that claim has to go in Turkey. Well, as I said before, the leave was not referenced anywhere. There's a salary provision in there. And a large portion of the claim relates to leave. As for the- Wasn't referenced anywhere in the contract or in the forum selection clause or? The contract itself or the series of contracts do not mention leave at all. There's a salary provision in there. And I think opposing counsel was probably correct that the agreements in the record redacted the salary, but there was a salary in. But the other thing is she was paid her wages, but she was paid her wages late. So it's not a claim for not paying the wages. It's a claim for paying the wages late. That falls outside the scope of the contract. Because the contract- Is penalized under the DC law. So she has, can you just sketch, just summarize for us, and then we'll let you sit down, the components of the pay she is seeking? Yes. So she's receiving 24 hours, sorry, 24 days. There's a conflict in that. There's an error, I think, in the complaint. 24 days of vacation leave, all of which was earned while she was in DC. And the way that works is in May of 2019, two months after she got there, they dumped it into her leave bank. It was an annual thing where she got it placed in her leave bank in May. So that's 20 hours. And then she worked four Turkish holidays. And those are also reimbursable as comp time. So that takes it to 24 days of leave. And are the 20 days per year, do they expire and renew on the next year? Is this over her whole time with AA Turk? It's the anniversary date, her anniversary date of employment. And she started, I think, in April of 2018. Or the end of April. Her replenishment date for the leave was the one year anniversary. So it's 20 max, and it just every year, if it's gone down to 12, it'll go up to 20. If it's gone down to two, it'll go up to 20. Or it's four and four and four and four, and it had gotten that high. I believe that either she didn't have any leave left when it was replenished in May, because she had used it, or she lost whatever she didn't use. So it's every year, it's 20. That's right. Every year, it's 20, yes. Zeroed out, and then to 20. That's what I believe, yes. And I just asked that the court address the employer issue, this case. It's consistent with a prior order that the trial court issued dismissing this case because she was not an employer. If the court confines its ruling just to the personal jurisdiction issue, if the court were to find there was personal jurisdiction, and this went back to the trial court, the trial court's order theoretically would be operative at that point, because the one bar to it was that the court hadn't decided personal jurisdiction, and I'm concerned that- The trial judge would have to decide to reinstate it, because it's been vacated by this court. Thank you. Just one small point. Yeah, just one small point. Oh, I'm so sorry. That's okay. You were claiming four Turkish holidays, and that kind of begs the question on whether or not the compensation is based on AA Turk, even though we're talking about a relationship between her vacation days in Anadolu. Well, AA Turk did provide, did pay my client, and also did provide the leave policies, but those same policies were adopted by Anadolu, and it's not clear at this stage, because we haven't done any discovery, the interrelationship of all that, and AA Turk may very well have determined for Anadolu that those same policies applied to all Anadolu employees. We just don't know, because we haven't had the opportunity for discovery. So it's your position on that. On that point about the discovery, that was in opposition to your motion to dismiss for lack of jurisdiction, that you were trying to rebut the extrinsic evidence that was relied upon by Anadolu. So was it ever kind of brought up before that, before opposition? No, we had no opportunity for discovery before the motion to dismiss was filed. So it was brought up in opposition, and we didn't just request discovery on the issue of who terminated her. We, I filed an affidavit requesting discovery, explaining what I needed, and I incorporated that into the opposition. That's all in the record. And that affidavit specifically requested discovery on the employer issue. And it outlined lots of things I needed, including depositions. Unless the court has any more questions, I thank you for the extra time. Thank you both, the case is submitted.
judges: Pillard, Childs, Edwards